HOOKER STEAM PUMP COMPANY, Plaintiff,
   Appellant, v. JOHN B. BUSS, Defendant,
   Appellant.

**Division One, February 29, 1912.**

1. **CONTRACTS: Construction: Option.** The plaintiff and the
   defendant contracted for the making and selling of pumps,
   and their contract placed certain drawings, etc., property of the
   plaintiff, in the custody of the defendant at an appraised value.
   Clause 17 of the contract provided that upon its discontinuance
   there should be a reappraisement of the plaintiff's drawings,
   etc., the difference to be paid to the proper party, and reim-
   bursement by the plaintiff to defendant for all machinery added
   for the purpose of manufacturing the pumps, as well as for all
   stock of pumps on hand. A proviso followed to the effect that
   if the plaintiff refused to take the property and stock off defend-
   ant's hands, the latter should have the right to keep plaintiff's
   property on specified terms. If, however, the plaintiff should
   fulfill the provisions as to purchase, the defendant agreed to
   cease manufacturing pumps. The contract has been ended and
   the rights of the parties under clause 17 are to be adjudicated.
   *Held*, that this contract, without recourse to extraneous evi-
   dence, afforded each party an option to buy or not to buy the
   property of the other.

2. ———: ———: ———: **Exercise by Acts of One Party.**
   And where the defendant did in fact keep the drawings, etc.,
   lent him by the plaintiff and carry on the business after the
   termination of the contract, without paying either the royalty
   or the cash price specified therein, he is liable to the plaintiff
   for the agreed value of the property lent him.

3. ———: ———: ———: ———: **Counterclaim.** The de-
   fendant cannot recover upon a counterclaim against the plain-

240 Sup.—30

tiff for his (defendant's) added machinery and his left over stock. The plaintiff cannot, under the terms of the contract, be forced in any way to buy this property.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

REVERSED AND REMANDED.

*Christy M. Farrar, R. L. McLaran* and *Block & Sullivan* for plaintiff appellant.

(1) Where, by the terms of a contract, one of the contracting parties is obligated to do one of two things in the alternative, he has the option to do either at his election; but if he fails or refuses to do either, then the election passes to the other party to the contract. Coke, Litt. 145a; M'Nitt v. Clark, 7 Johns. (N. Y.) 466; Collins v. Whigham, 58 Ala. 438; Muller v. Pels, 94 Ill. App. 354; Kramer v. Ewing, 61 Pac. (Ok.) 1065; Phillips v. Cornelius, 28 So. (Miss.) 871; 1 Page on Contracts (Ed. 1905), sec. 1391; Bishop on Contracts (2 Ed.), secs. 785, 786, 1435. (2) The agreement to purchase was entire, and when the defendant had used or disposed of any portion of the property, the obligation to purchase was ended. Dersch v. Sander, 37 Mo. 106; McMannus v. Gregory, 94 Mo. 370; Hill v. Mining Co., 119 Mo. 27; Construction Co. v. Iron Works, 169 Mo. 157; Barrie v. Seidel, 30 Mo. App. 563; Smith v. Coal Co., 36 Mo. App. 583; Morrison v. Leiser, 73 Mo. App. 98; Equitable, etc., Co. v. Engelke, 68 N. J. L. 570; Inland v. Cotton Mills, 116 Tenn. 147; Lumber Co. v. Ward, 36 W. Va. 581; Newell v. Canning Co., 119 Wis. 641. (3) The judgment on the plaintiff's cause of action is independent of the judgment on the counterclaim, and the reversal of the latter should not disturb the former. Gamble v. Gibson, 83 Mo. 296; Mooney v. Kennett, 19 Mo. 554; Needles v. Burk, 96 Mo. 476; Donnell v. Wright, 199 Mo. 312; Hunt v. Rail-

road, 89 Mo. 609; Sparks v. Transfer Co., 104 Mo. 548; Reichenbach v. Benefit Assn.. 112 Mo. 23; Balch v. Myers, 65 Mo. App. 422; Hartman v. Lumber Co., 96 Mo. App. 294; Fitzpatrick v. Dooly, 112 Mo. App. 176; Blackmer, etc., Co. v. Railroad, 137 Mo. App. 479.

*Kinealy & Kinealy* for defendant appellant.

(1) There is no evidence that defendant, Mr. Buss, retained the patterns or drawings of plaintiff as his own property or accepted the option set forth in the second sentence of clause 17 of the contract, but there is ample evidence that he refused to do so. (2) The obligation of plaintiff to defendant on the termination of the contract is an independent obligation, and under it defendant was entitled to a recovery for every item included in the last sentence in clause 17, wholly independent of any other stipulation in the contract. (3) The third sentence of clause 17 of the contract was merely a provision for an option by which Mr. Buss might retain the old patterns as his own property if he thought fit to do so, but he never did so and hence no obligation of Mr. Buss under that sentence ever existed. (4) A mere retention or use of the property of another does not pass the title to the wrongdoer against his repudiation of ownership by him; that only happens when judgment is obtained for the conversion and paid. Mitchell v. Shaw, 53 Mo. App. 652, 28 Am. & Eng. Ency. Law (2 Ed.) 738. (5) Lastly, those patterns, if used at all, by Mr. Buss, after the contract expired, were used in getting out orders for pumps or repairs under an arrangement entered into by defendant with plaintiff at the solicitation of plaintiff, and plaintiff is estopped to claim that such use by defendant of those patterns for such a purpose constitutes a detention of them by him as his own property. (6) The evidence shows that Mr. Buss never took or retained any of those patterns as his own property and

of course unless it was shown that he did so retain them there could be no claim by plaintiff to payment for the old patterns, under the third sentence of clause 17 of the contract.

BOND, C.—Plaintiff, a manufacturer and seller of pumps, and defendant, a capitalist and owner of a plant for making and selling machinery and tools, entered into a contract on February 8, 1901, providing for the making and selling of the respective articles which each of them had previously sold. This contract set forth fully the rights and duties thereunder of the two parties, and, among other things, stipulated that certain articles belonging to plaintiff and defined as "patterns, core boxes, etc., and drawings" should be appraised and put in the custody of defendant for the purposes of the contract, but the title to remain in plaintiff. The contract then is, to-wit:

"15. This agreement shall be in force for four years from this date.

"16. Six months prior to the expiration of the term of this agreement, or of future renewals, if either party does not wish to continue or renew this agreement, said party shall notify the other in writing of its decision; otherwise said agreement shall remain in force for an additional four years under the same condition as existed before.

"17. In event of the failure to renew or continue this agreement, an appraisement shall be made of the patterns, core boxes and drawings and if that appraisement is greater than the appraisement made under the said article 12 the difference shall be paid to the party of the second part; but if less, the difference shall be paid to the party of the first part. The party of the first part shall also reimburse the party of the second part for all machinery attachments, jigs, templets, etc. which the latter shall have added to its plant for the purpose of manufacturing

the Hooker steam pumps, at the original cost price, reasonable allowance for wear and tear excepted, and also for all pump material parts and whole pumps in stock at cost price. If in event of such discontinuance of, or failure to renew or continue this agreement said party of the first part refuses to take said patterns, machinery and stock off the hands of the party of the second part, the latter shall have the right to retain all the patterns and drawings of said first party as its own property, and to continue the manufacture of the Hooker steam pumps for its sole account, either by paying the party of the first part a royalty of three per cent on its sales for four years, or the value of said patterns and drawings originally belonging to the Hooker Steam Pump Co., at which they were appraised when turned over to the party of the second part. If this agreement is not renewed or continued under the conditions aforesaid and the party of the first part thereupon fulfills the provisions as to the purchase of patterns, machinery and stock, the party of the second part agrees thereafter not to continue the manufacture of steam pumps, except that if the continuance or renewal of this agreement be not desired by party of the first part, the party of the second part may continue under its own name the business theretofore done by it under this agreement.''

The following letters were exchanged between the parties.

RELIANCE MACHINE AND TOOL WORKS.
ST. LOUIS, Mo., Aug. 4, 1904.

Mr. WM. C. FARRAR, Prest.,
  Hooker Steam Pump Co.
Dear Sir:
    I hereby notify you that the agreement entered into between your company and myself relating to the manufacture of Hooker steam pumps, on the 8th day of February, 1901, for a term of four years, expires on the 8th day of February, 1905, and that I will not continue or renew it.
            Yours respectfully,
                            J. B. BUSS.

Jan. 27, 1905.

HOOKER STEAM PUMP CO.,
    101 N. Third St., City.
    Gentlemen:    The amount of machine tools, pumps, etc. which
you would have to buy from us, according to contract, is $26,173.81,
as specified below:    Machine tools, $3290.35; Other Tools, $944.29;
New Patterns, $2217.22; New Drawings $1500.00; Finished Pumps
on hand, $8249.61; Finished Pump Parts on hand, $5991.13; Partly
finished Pump Parts, $1028.00; Raw material on hand, $2953.21;
Total, $26,173.81.
                        Yours respectfully, ·

                            RELIANCE MACHINE & TOOL WORKS.

                    THE HOOKER STEAM PUMP CO.,
                        Office 101 N. Third St.
                                        ST. LOUIS, Feb. 1, 1905.
MR. J. B. BUSS, Propr.,
    Reliance Machine and Tool Works, St. Louis, Mo.
Dear Sir:
    We find that we cannot take your stock of pumps, machinery,
etc. off your hands at the expiration of our contract on Feb. 8, '05.
Are you willing to continue the contract as it stands for six months·
in order to give us further time to relieve you of said stock?    We
ourselves desire to renew the contract for another four years and
think so doing would prove advantageous both to you and ourselves.
If however you are unwilling either to renew, or extend the con-
tract for six months, you are as you know entitled to continue the
manufacture of the pumps by paying us the inventoried value of our
patterns or a three per cent royalty for four years.    Will you kindly
let us know what you will elect to do in this matter?    We also ask,
supposing you continue to build pumps, what discount you will make
to us from present prices on pumps?    We desire to be informed at
once on these matters, as we are constantly called on for prices, and
it is to our mutual interest to be settled in regard to the future.
We were in hopes of arriving at an understanding of the future
situation before this,·but of course desired first to be informed as to
the value you placed on the stock, etc.    Hoping to hear from you
in a day or two, we are,
                        Very truly yours,
                            HOOKER STEAM PUMP CO.,
                                W. C. FARRAR, Prest.

                            JENNINGS, Mo., Feb. 4, '05.
THE HOOKER STEAM PUMP CO.,
    Mr. Wm. C. Farrar, Prest.
Dear Sir:
    Yours of the first inst. came duly to hand.    Having been sick at
home for a number of days, I regret I could not answer before this.
I see from it that you cannot take the stock of pumps, machinery,
etc. from off my hands at the expiration of our contract, and as I
do not think you will succeed to do so within six months, I cannot

entertain the proposition to extend the contract for that length of time; as the business has been a disappointment to me, I would rather have it from my hands. And for that reason I decline to pay for the patterns, the inventoried price. Under the circumstances, having pumps, material and castings, etc. on hand, I am compelled to continue the sale and manufacture of pumps, at least for the present. I made you a proposition sometime ago in regard to the terms on which I would be willing to have you continue the sale of these pumps. You do not refer to that when you ask in your letter what discount I will make you now. I will say that that proposition holds good, or, if you prefer, I will give you five per cent on pumps made from your patterns, and ten per cent on pumps made from our patterns on regular list prices. Any order you may receive and be pleased to send to the Reliance Machine and Tool Works will be considered on either one of these two propositions. I would have preferred to have gone over this verbally with you, but as I have been called away to go east suddenly, I write this in a hurry to let you know in time. Requesting your acknowledgment of receipt of this and your disposition in regard to it,

I remain, yours truly,

J. B. Buss.

The Hooker Steam Pump Co.

101 N. 3rd St.,

St. Louis, Feb. 8, 1905.

Reliance Machine and Tool Works,

    Mr. J. B. Buss, Prop.,

        St. Louis, Mo.

Dear Sir:

We received your favor of the 4th on the 6th, and as we do not understand from same what you mean to do in regard to our patterns, we beg you to inform us at once, especially as you told the writer in an interview about two months ago that you did not want to keep the patterns. You now say that you decline to pay for the patterns, at the inventoried price, but will continue the manufacture and sale of the pumps, "at least for the present." Kindly advise us whether you have elected to retain the patterns as your own property, by continuing the pump manufacture for four years and paying us during that period three per cent royalty on all sales. Our contract ends today and we certainly must know whether you wish to keep the patterns, and if so, in which of the two ways provided by the contract you elect to compensate us for same. Your proposition of several months back, made when we discussed a modified continuance of the contract, we felt we could not accept. Hoping to hear from you by return mail, we are,

Yours very truly,

Hooker Steam Pump Co.,

W. C. Farrar, Pres't.

THE HOOKER STEAM PUMP CO.,
Room 218 Granite Block, Market St.

ST. LOUIS, Mar. 11, 1905.

RELIANCE MACHINE AND TOOL WORKS,
St. Louis, Mo.
Mr. J. B. Buss, Prop.

Dear Sir:

After careful consideration of your proposition for a year's contract between us, we have finally decided that we cannot accept same, and that so far as concerns the compensation which we are to receive for our patterns, if you have decided to retain same, we will accept remuneration as provided in the contract which expired on Feb. 8th. Therefore in order to have the matter definitely settled, we will ask you to state whether you wish to keep the patterns, as was your privilege under the contract, and if so, will you pay us for same in cash, or do you elect to continue the pump manufacture and pay us for our patterns the three per cent royalty on all sales for four years. Our patterns are the only tangible asset left of our plant and if they are to be taken from us, in all fairness we should receive for them the compensation, in such event, provided in the contract. Kindly give us an answer by return mail and oblige,

Very truly yours,

HOOKER STEAM PUMP CO.,
W. C. FARRAR, Pres't.

RELIANCE MACHINE AND TOOL WORKS,

St. Louis, Mar. 16, '05.

HOOKER STEAM PUMP CO.,
Granite Building, City.

Gentlemen:

I am willing to give you a commission of seven per cent upon those orders out of the stock on hand or with pumps manufactured for the purpose, but will do so only with a distinct understanding and consent on your part that I waive no rights which I now possess under the contract between you and myself, just now expired, and shall treat those orders as an assurance to me from you that none of my rights under that contract whether it be deemed in existence or terminated shall be in any manner impaired by filling them. When you notify your assent to this condition, I will proceed to fill the orders on the basis of a commission of seven per cent.

Yours truly,

J. B. Buss.

P. S. Enclosed I hand you copy of a letter just received from my attorney for your consideration.

March 17, 1905.

RELIANCE MACHINE AND TOOL WORKS,
    J. B. Buss, Prop.,
        St. Louis, Mo.
Dear Sir:
    Referring to your letter of March 16th in regard to our orders, will say in reply that as we do. not wish to disappoint our customers, we will consent to your proposition, but do so only with a distinct understanding and consent on your part that we waive no rights which we now possess under contract which we have with you and which expired in part on Feb. 6, 1905. Trusting that this will be satisfactory pending our decision, we are,
                    Yours very truly,
                            HOOKER STEAM PUMP CO.

THE HOOKER STEAM PUMP CO.,
    101 N. 3rd Street,
                    ST. LOUIS, Mar. 17, 1905.
RELIANCE MACHINE AND TOOL WORKS,
    Mr. John D. Buss, Prop.,
        St. Louis, Mo.
Dear Sir:
    We are in receipt of your favor of the 16th with inclosed opinion of your counsel. In reply we beg to state that we laid the matter before our attorneys, who went carefully over the whole ground, and as a result, we are utterly unable to agree with the view of your attorneys, and ask you again to elect whether you will compensate us for our patterns by paying us three per cent on all sales for four.. years, or the cash inventoried value of patterns; or if you do not care to keep the patterns, we will voluntarily agree to take them back. If you do not elect, we will be compelled to elect for ourselves. We feel that we are entitled to your immediate answer as over five weeks have elapsed since we first asked you to make known your decision in the matter. You will recall that in your recent interview with the writer you were free to admit our right to three per cent royalty contended for in lieu of the cash consideration, but limited in your view, said royalty to certain sales only. The same admission was restated by Mr. J. B. Buss, your Gen. Mgr. over the telephone, when he refused to fill certain orders, on which you had agreed to pay us ten per cent commission, until you had settled the question of the extent of the application of the three per cent royalty. Your Mr. Saber also admitted its existence in a later conversation. We trust the matter may be settled amicably for the sake of both parties, but on one point we are settled in our opinion; That we cannot be deprived of our remaining interest in the Hooker Pump Plant, namely, our patterns, without compensation. We were willing and wished to renew the contract; we were unable—did not in fact refuse—but asked for more time to take all pumps, machinery, etc. off your hands. This extension you declined to grant.

The plain, fair and only equitable construction to be put on the clause of the contract upon which we rely is the purpose, in just such a contingency as has arisen, of affording you the means of continuing the business, and ourselves a satisfaction for our patterns. This contingency was in the contemplation in the very framing of the contract. The possibility of our failure to take your stock, etc. at the expiration of four years, was foreseen. Hence the provision giving you the opportunity of buying our patterns, to permit you to continue the manufacture of the Hooker pumps. Kindly give us your answer not later than tomorrow and oblige,

Yours very truly,

HOOKER STEAM PUMP CO.,
W. C. FARRAR, Pres't.

March 20, 1905.

HOOKER STEAM PUMP CO.,
Wm. C. Farrar, Pres't.
Dear Sir:

I received your letter of yesterday and have given it careful consideration. I will not discuss the relative value of the opinions of our respective attorneys alluded to therein, but would remind you as an additional matter for consideration that when I entered into the contract with your company, I was made to believe by you, that the Hooker steam pump was covered by subsisting patents which gave the right to manufacture it, that the patterns were complete for the full line of pumps, and that the amount of business you intimated to do would justify me to put up the additional machinery to the extent I have done, which together formed the basis of that contract. This, however, was not grounded on the fact. The admissions you mention, if any such were made—which I do not concede—arose from a mistaken view of my legal rights under the contract and cannot now affect those rights in any manner. I never opposed a fair compromise but you have offered none, preferring apparently to stand on what you say are your rights. Under those circumstances, I can only follow the same course, so far as insisting on my rights under the contract goes, and therefore I demand that you immediately appoint an appraiser under the contract to act with one appointed by me to appraise the value of patterns, core boxes and drawings as provided in section seventeen. Should you fail or decline to appoint an appraiser, I will have appraisement made, give you credit for any sum you may be entitled to under these appraisements on the amount due me for the machinery, etc., which you agreed to pay for under clause seventeen, and then call on you to further comply with that contract by paying me the balance. When you do so, you can have all the patterns, machinery, etc. specified to be given you, on such payment by clause seventeen.

RELIANCE MACHINE AND TOOL WORKS,
                        ST. LOUIS, Mo., April 22, 1905.

HOOKER STEAM PUMP CO.,
    Granite Bldg., City,
Gentlemen:
    Under date of Jan. 27, 1905, I sent you statement showing the
net value of all the stock of pumps, material, special tools, etc., on
hand, which according to an agreement between us dated Feb.
8, 1901, you were to take back after expiration of said agreement.
On March 21st I requested you to appoint an appraiser for the pur-
pose of appraising the patterns in order to ascertain the value of the
patterns which you turned over to me on the date of the agreement,
that the amount of depreciation, if any, might be deducted from
said amount of stock, as above mentioned, and the balance be paid
to me on turning over said stock to you.  As you have ignored said
request as expressed in my letter of March 21st, and after waiting
a reasonable time, I have had said patterns appraised, according as
I stated in said letter, and have also caused the patterns which I
was compelled to furnish in course of time on account of the incom-
pleteness of your line of patterns in order to present to the trade a
full line of pumps mentioned in your catalogue, to be appraised.
Enclosed I hand you a complete statement of what you owe me, after
deducting from my bill the difference of the present valuation of
your patterns from what they were appraised at four years ago,
which difference amounts to $102.60, detailed statement of which
signed by the appraiser I am ready to furnish if desired.  I again
request you to take the stock of pumps, material, etc. from my
hands, on paying amount of bill due me and oblige,
                        Yours truly,
                                        J. B. BUSS.


                THE HOOKER STEAM PUMP CO.,
                        406 Market St.
                                ST. LOUIS, Mo., April 26, '05.
RELIANCE MACHINE AND TOOL WORKS,
    Mr. John B. Buss, Prop.,
        St. Louis, Mo.
Dear Sir:
    Will say in answer to yours of the 22d inst. that we fail to un-
derstand how you can consistently make the demand therein made.
You declined last January to give. us further time to take pump
plant off your hands and now at this date come at us with this de-
mand.  You apparently forget that your letter of Feb. 4th distinctly
acquiesced that you proposed to continue manufacturing pumps.
This and your acts since the expiration of contract are sufficient
refutation of your right to make the demand in question were our
rights not amply protected by a clause in our contract which you
persistently ignore.  Aside from the above conclusions, however,

the contract by its very terms contemplated and provided for just the contingency which has arisen, namely, our failure to take off your hands stock of pumps, machinery, etc. In such contingency only were you given the right—of which you have availed yourself—to manufacture pumps and to retain our patterns as your own property by paying us for same in one of the two ways in the contract provided. You have declined or neglected to elect in which of the ways provided you would pay us, though we have repeatedly urged you to elect, and notified you that should you fail to elect we would ourselves make an election. Your refusal to allow us the three per cent royalty on sales as evidenced by your statement a few days ago and the unwarranted position assumed in your letter of the 22d compels us to elect for ourselves. We therefore elect that you pay us the inventoried value of the patterns as provided in contract and ask you to kindly send us remittance for amount of same, sixty-two hundred and forty-nine ($6249.00) dollars. We trust you will appreciate our position which is simply due to a radical difference of opinion as to our respective rights. Awaiting your prompt answer, we are,

Yours very truly,

HOOKER STEAM PUMP CO.,
W. F. FARRAR, Pres't.

RELIANCE MACHINE AND TOOL WORKS,
ST. LOUIS, Mo., May 2, 1905.

MR. WM. C. FARRAR,
Granite Bldg., City.
Dear Sir:

I have just received your letter of the 26th inst. I cannot accept your interpretation of the contract, or acknowledge your claims, and must insist on the demand made in my last letter to you.

Yours truly,

J. B. BUSS,
Prop. Rel. Mac. & Tool Wks.

THE HOOKER STEAM PUMP CO.,
406 Market St.
ST. LOUIS, June 6, 1905.

J. B. BUSS, Esq.,
Prop., Reliance Machine & Tool Works,
St. Louis, Mo.
Dear Sir:

We wrote you on the 26th April last making a formal demand in support of our legal rights, that you pay us the value of the patterns which you acquired from us, under the provisions of the contract, which expired Feb. 8th, last. Your answer by letter dated May 2d, last, was entirely beside the mark, as you are aware that the question of taking over your machinery was settled months ago. There is no disputing the fact that the contract on which we base

our claims was submitted before its execution to your present attorney, Mr. Kinealy, for our mutual benefit. Every clause was gone over and its meaning and purpose discussed. The meaning of the clause on which we now base our claim was at that time understood to mean just what it says, and what we claim. How it can be distorted to mean anything else is past our understanding and that of our attorneys. We are certainly entitled to this money and we trust upon further consideration you will pay us without bringing the matter into court. Will you kindly give us your final answer and oblige.

Yours very truly,

HOOKER STEAM PUMP CO.,<br>W. C. FARRAR, Pres't.

ST. LOUIS, Mo., June 6, 1905.

MR. WM. C. FARRAR, Care HOOKER STEAM PUMP CO.,

    Granite Bldg., City,

Dear Sir:

I acknowledge receipt of your letter and will say that I cannot agree with your views and your construction of the agreement, as stated to you before.

Yours very respectfully,

J. B. BUSS.

On June 15, 1906, plaintiff brought this suit for $6249.60, the appraised value of its property. Defendant counterclaimed for the appraised value of the property added by him to the stock on hand at the expiration of the contract, and tendered said property, and asked judgment for $18,221.95. Issue was joined by reply. There was evidence tending to prove that defendant since the expiration of the contract has used the property loaned by plaintiff and his own additions to make and sell pumps on his own account, paying plaintiff the commission stipulated in the letters for sales made by it. The case was submitted to the court, sitting as a jury. The court rendered judgment for plaintiff's claim and for the counterclaim of defendant, and gave judgment for defendant for the balance of $17,544.84. Both parties appealed.

## OPINION.

I. The rights of the parties grow out of a correct construction of section 17 of their contract and their action thereunder after the discontinuance of the contract. That clause of the contract contains the elements of its interpretation without recourse to extraneous evidence. It provides for a re-appraisement of the "patterns, core boxes and drawings" furnished by plaintiff, and the payment to the proper party of any increase or decrease in their value from the first appraisement. It then provides for the repayment to defendant of the cost of things added by him to carry out the contract, fixing this at the price paid by him less deduction for wear and tear, and for the further reimbursement to him of all pumps and parts of pumps on hand at cost price, with the proviso that if plaintiff "refuses to take said patterns, machinery and stock," then defendant may retain the things loaned by plaintiff as his own property, and thereafter do business on his own account "by paying" plaintiff a royalty on all sales of Hooker steam pumps made by him for the next four years, or by paying plaintiff the original appraised value of the said loaned articles. The contract then provides that if plaintiff shall purchase the added appliances and the stock on hand, the defendant will not engage in the future manufacture of "steam pumps" except upon condition specified.

There is no uncertainty or ambiguity about the meaning of the language of this clause nor the other clauses of the contract. It was discontinued according to its purview by a written notice sent to plaintiff six months before the lapse of four years after its formation. The relative rights and status of the parties on February 1, 1905 (the date the contract was ended) were therefore governed by its terms and provisions with reference to that contingency. These are clear, certain and specifically definitive of the mutual rights

and duties of the parties after the cessation of their contract.

At the close of its contract, plaintiff could repay defendant for the added materials and the stock on hand and continue the pump business on its own account; or defendant could buy for money or a royalty the reserved title of plaintiff on the things loaned, and continue the business on his own account. The terms of the contract demonstrate that plaintiff was not obligated unconditionally to "reimburse" defendant for his additions in the way of material and his stock on hand. Such a construction would nullify the last paragraph of section 17, which provides that *if* this reimbursement is made, defendant shall go out of business, which necessarily involves the meaning that defendant could only continue in business if plaintiff refused to reimburse him by exercising its option to buy. This contract afforded each party the correlative and conditional option to buy or not to buy the property of the other in language leaving no room for construction.

II. The next consideration is the effect if any, of the letters of the parties altering or modifying the status in which they were left on the cessation of their agreement. The first letter was by defendant of date January 27, 1905, offering to sell his interest to plaintiff, who replied that it was unable to purchase and asked a continuance of the agreement, which defendant refused to grant. There is nothing in any of the subsequent letters from plaintiff which indicates that it at any time receded from its refusal to buy the articles tendered by defendant in his letter of January 27, 1905. All that can be gathered from these letters from plaintiff is the renewed demand that defendant should indicate how he would pay for the articles put in his custody during the life of the contract and which were not surrendered at its termination. In none of the letters of defendant is there any direct answer to this question, other than a statement in one of them that

he did not propose to pay the inventoried price. He was free to decline this purchase for he was not compelled to use plaintiff's property. The terms of the contract compelled him only in case he desired to continue the business and to appropriate plaintiff's property for that purpose, to pay either its inventoried price or a royalty of three per cent on sales. He did carry on the business for himself, and he and plaintiff did make a non-prejudicial agreement as to *commissions* to be paid plaintiff on future sales of the products of the business conducted by him; but he never paid plaintiff the royalty specified in the contract as one of the two ways in which he might acquire title to the loaned things, nor did he pay for them the cash price fixed by the contract.

Clearly, therefore, there was no error in the findings of the trial court against him for the price of these articles. For he kept and used them as his own and never tendered them to plaintiff, and failed to state upon repeated demands how or in which manner he would pay for them. Our conclusion is that the verdict in plaintiff's favor for the agreed value of this property should stand, and that judgment be entered on said verdict, as of the date of its finding.

III. The remaining question is, should the verdict for defendant stand? We do not perceive any theory of the facts upon which that verdict can be upheld. Under the terms of the contract plaintiff had a right to retake the custody of the articles loaned defendant and to buy from him his additional machinery and stock left over. Plaintiff had also the right to refuse to do this, in which event the defendant's right accrued to carry on the business on his sole account, and to that end to take as his own the loaned articles by paying for them in cash or on the basis of a royalty on sales. Defendant did not have the right under the contract to compel plaintiff to buy from him; nor did

plaintiff have the right under the contract to compel defendant to buy of it; both parties might have abandoned the business altogether, each retaining that which belonged to them respectively. But the business could not be carried on after the end of the contract by either except in compliance with the stipulations therein governing its future conduct. Defendant did carry on and still conducts (as far as this record shows) the business for which the contract was made as his own business, and has used plaintiff's property in so doing. It necessarily follows that he has thereby obligated himself to plaintiff in the manner specified in their contract.

It is no answer to say that defendant was willing and now offers to sell the "additional machinery and left over stock" to plaintiff, even if he were in a position to make that tender good, which the record does not disclose. For plaintiff did not covenant unconditionally to buy the property. It only covenanted what price it would pay if it desired to purchase, and what price it would receive if defendant desired to purchase the property. Plaintiff never took any position repugnant to its declination to buy. Defendant did take a position inconsistent with the exercise of its option not to buy. For he retained and used plaintiff's property as his own up to the date of trial, and neither in his pleadings nor on the trial ever made any offer to return it.

The sum of the case is, that defendant has the property of plaintiff for which he has not paid in either of the modes he might have done under the contract; and he has his own property, which he offered and still offers to sell to plaintiff, and which plaintiff refuses to purchase, as it had the contract right to do.

It follows that the verdict for defendant for his counterclaim was erroneous and must be set aside, and a finding made that he is not entitled to recover there-

on, and judgment rendered accordingly. The judgment is reversed and the cause remanded to be disposed of in accordance with this opinion. *Brown, C.;* concurs.

PER CURIAM.—The foregoing opinion of BOND, C., is adopted as the opinion of the court.